[DO NOT PUBLISH]

In the

# United States Court of Appeals

## For the Eleventh Circuit

_____

No. 21-12785

Non-Argument Calendar

_____

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

*versus*

BRANDON MIQUEL LEWIS,
a.k.a. Brandon Lewis,
a.k.a. Brandon M. Lewis,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Northern District of Georgia
D.C. Docket No. 1:03-cr-00433-TWT-JKL-1

_____

Before ROSENBAUM, LAGOA, and BRASHER, Circuit Judges.

PER CURIAM:

Brandon Lewis appeals after the district court revoked his supervised release and sentenced him to 60 months in prison. He contends the court abused its discretion by relying on a general and unproven allegation that he possessed with intent to distribute approximately 100 pills containing fentanyl, and by imposing a substantively unreasonable sentence that failed to account for significant mitigating factors. After careful review, we affirm.

## I.

In January 2005, Lewis was sentenced to 188 months in prison after pleading guilty to possession of a firearm after a felony conviction and possession with intent to distribute less than two grams of cocaine base. At that time, the court warned him that, because of his criminal history, he would face up to life imprisonment for any future federal drug-trafficking crimes. He also received a five-year term of supervised release, which he began to serve when he left prison in June 2019.

In March 2020, Lewis's probation officer petitioned for a warrant for his arrest for violating the conditions of release by committing new criminal offenses, failing to timely notify the probation officer of his arrest, and failing to submit to drug testing. The probation officer explained that Lewis had been arrested for and charged with possession of oxycodone with intent to distribute in

October 2019, after Fulton County Jail officials found approximately 100 grams of oxycodone on Lewis's person during booking on an old warrant from 2004. The probation officer later clarified in a June 2021 filing that the pills found on Lewis in October 2019 had looked like oxycodone but were tested and found to contain fentanyl. The charges were later dropped. The officer also reported that Lewis at times had failed or refused drug tests and had admitted marijuana use.

Because Lewis broadly denied the probation officer's allegations, the government called several witnesses to prove its case at the final revocation hearing in August 2021. Lewis's probation officer testified that Lewis failed to report his arrest on new charges in October 2019, even though he spoke with the probation officer soon after his release from jail in November 2019, and that Lewis tested positive for marijuana and cocaine twice each, failed to report for drug testing twice, and had one sample rejected as diluted. The probation officer acknowledged that Lewis had struggled with addiction since he was a teenager and that he had been gainfully employed before the pandemic but chose to stay home to take care of his young daughter.

An officer with the Fulton County Sheriff's Office testified that he found a plastic bag of white pills in Lewis's genital area during an intake strip search at the jail in October 2019. And a forensic chemist with the Georgia Bureau of Investigation, who weighed and tested the pills, testified that they weighed 96.245 grams and

contained fentanyl.  The chemist estimated there were at least 100 pills.

The government argued that Lewis should be sentenced to the maximum term of 60 months in prison.  In support, it asserted that Lewis possessed with intent to distribute fentanyl, an extremely dangerous substance, not long after his release from prison on a drug charge.  It explained that it had considered charging Lewis with a federal offense based on the fentanyl pills but had opted to proceed with revocation instead.  It also cited Lewis's extensive criminal history, including several distribution charges, and repeated violations of the conditions of supervised release.

In response, Lewis asserted that drug treatment, not incarceration, was warranted because his bad behavior was driven by longstanding drug addiction.  Despite his addiction problems, he continued, he had taken positive steps in his life, including obtaining employment, getting married, and having a baby.  He further noted that the underlying charges had been dismissed.  The government replied that Lewis's conduct showed he had "a problem with authority," not just addiction.

The district court found that Lewis violated the conditions of his supervised release in the ways alleged by the probation officer.  The court calculated a guideline range of 51 to 63 months based on a Grade A violation and a criminal-history category of VI, with a maximum of 60 months.

Lewis personally addressed the court and discussed losing close family members while in prison, his difficulty adjusting to life outside prison, and his efforts to create a new life, including becoming an electrician, going to school, and starting a family. He freely admitted using marijuana but adamantly and repeatedly denied using cocaine. And he pleaded for mercy and the chance to keep on the positive path he was on.

The district court sentenced Lewis to 60 months in prison with no supervision to follow, referencing its comments at the 2005 sentencing about "what was going to happen if you got involved with dealing drugs again." The court explained to Lewis that its choice of sentence had "nothing to do with you using marijuana . . . [or] testing positive for cocaine" and "everything to do with you being found in possession of approximately 100 pills of fentanyl." In the court's view, there was no "more dangerous drug to the community" than fentanyl. The court further found that Lewis had "completely demonstrated" at the hearing that he did not accept responsibility for possessing the drugs or failing to obey the instructions of his probation officer.

## II.

Challenging the revocation of his supervised release, Lewis appears to make two distinct arguments. First, he says that the evidence did not support the court's finding that he possessed with intent to distribute fentanyl. And second, he asserts that the court failed to comply with due process in relation to stating "the factual findings and the reasons relied upon for revocation."

We review for abuse of discretion the district court's determination that the defendant violated the terms of supervised release. *United States v. Copeland*, 20 F.3d 412, 413 (11th Cir. 1994). We review a district court's factual findings for clear error. *United States v. Johnson*, 694 F.3d 1192, 1195 (11th Cir. 2012). A district court's choice between two permissible views of the evidence cannot be clear error, and substantial deference is afforded to the court's credibility determinations. *United States v. McPhee*, 336 F.3d 1269, 1275 (11th Cir. 2003).

A district court may revoke a term of supervised release and impose a prison sentence when it finds by a preponderance of the evidence that a defendant violated a condition of supervised release. 18 U.S.C. § 3583(e)(3); *United States v. Hofierka*, 83 F.3d 357, 363 (11th Cir. 1996). To comply with due process, the revoking court must state the factual findings and the reasons relied upon for revocation, beyond mere general conclusory reasons. *Copeland*, 20 F.3d at 414–15; *United States v. Lacey*, 648 F.2d 441, 445 (5th Cir. June 19, 1981).[1] But due process is satisfied, and no remand is warranted, where "the evidence and the reasons for revoking supervised release were clear." *United States v. Johnson*, 678 F.3d 1210, 1211 (11th Cir. 2012).

---

[1] This Court adopted as binding precedent all Fifth Circuit decisions prior to October 1, 1981. *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981) (*en banc*).

Here, Lewis has not shown that the court clearly erred in finding that he possessed with intent to distribute approximately 100 pills containing fentanyl. That finding was supported by the testimony of the jail officer who discovered the bag of pills hidden in Lewis's genital area during an intake search, and the forensic chemist who determined that the approximately 100 pills weighed 96 grams and contained fentanyl. And the court reasonably inferred from the large number of pills that they were intended for distribution and not personal use. The court was entitled to rely on that conduct even though the charges were dismissed. *See United States v. Rushin*, 844 F.3d 933, 942 (11th Cir. 2016) ("We have previously explained that sentencing courts may consider both uncharged and acquitted conduct in determining the appropriate sentence." (quotation marks omitted)). Because the court's finding was a reasonable view of the evidence presented at the revocation hearing, no clear error occurred.

Nor did the district court fail to comply with the due-process requirement of stating the factual findings and the reasons relied upon for revocation. *See Copeland*, 20 F.3d at 414–15. Indeed, Lewis's briefing acknowledges that, in revoking his supervised release and imposing a prison sentence, the court "made it clear it was making that finding based solely on Mr. Lewis' possession of fentanyl." Because "the evidence and the reasons for revoking supervised release were clear," the court's explanation was sufficient to comply with due process. *See Johnson*, 678 F.3d at 1211.

### III.

Next, Lewis argues that his 60-month sentence is substantively unreasonable and fails to account for significant mitigating factors, including his drug addiction and lack of meaningful treatment, as well as his efforts to build a better life by working, going to school, and starting a family.

A sentence imposed upon revocation must be "sufficient, but not greater than necessary," to comply with the sentencing goals of deterrence, protection of the public, and rehabilitation of the defendant. *See* 18 U.S.C. § 3583(c). The court must also consider the nature and circumstances of the violation, the history and characteristics of the defendant, and the sentencing guidelines, among other factors. *See id.*

After settling on an appropriate sentence, the district court "must adequately explain the chosen sentence to allow for meaningful appellate review and to promote the perception of fair sentencing." *Gall v. United States*, 552 U.S. 38, 50 (2007). The court should do enough to show "that [it] has considered the parties' arguments and has a reasoned basis" for its decision. *Rita v. United States*, 551 U.S. 338, 357 (2007). It is not required to discuss each § 3553(a) factor or argument, so long as the record reflects that the court considered them. *United States v. Carpenter*, 803 F.3d 1224, 1232 (11th Cir. 2015). Even if a defendant presents substantial mitigating evidence, the district court's "lack of a downward variance alone does not demonstrate that the district court failed to afford

consideration to these factors." *United States v. Lebowitz*, 676 F.3d 1000, 1016 (11th Cir. 2012).

"The weight accorded to any one § 3553(a) factor is a matter committed to the sound discretion of the district court, and a court may attach great weight to one factor over others." *United States v. Taylor*, 997 F.3d 1348, 1354 (11th Cir. 2021) (quotation marks omitted). "We may vacate the sentence only if we are left with the definite and firm conviction that the district court committed a clear error of judgment in weighing the § 3553(a) factors by imposing a sentence that falls outside the range of reasonableness as dictated by the facts of the case." *Id.* (quotation marks omitted). "We may not—it bears repeating—set aside a sentence merely because we would have decided that another one is more appropriate." *United States v. Irey*, 612 F.3d 1160, 1191 (11th Cir. 2010) (*en banc*).

Because our review is deferential, we must affirm the district court. The court did enough to show that it considered the parties' arguments and the § 3553(a) factors and had a reasoned basis for sentencing Lewis to 60 months in prison. The court was not required to discuss each § 3553(a) factor or argument in mitigation. *See Carpenter*, 803 F.3d at 1232. And the record shows that the court listened to and considered the parties' arguments and Lewis's allocution, which covered the mitigating factors Lewis claims were ignored, but concluded that a sentence within the guideline range was appropriate in light of his new criminal conduct, his criminal history, and his failure to accept responsibility. That the court did not give the mitigating factors the weight Lewis believes they

deserve is not enough, on its own, to show that the court "failed to afford consideration to these factors." *See Lebowitz*, 676 F.3d at 1016.

We also cannot say that the sentence is substantively unreasonable. Lewis's 60-month revocation sentence was within the advisory guideline range, so we "expect it to be" reasonable. *See United States v. Castaneda*, 997 F.3d 1318, 1332 (11th Cir. 2021). Moreover, the court, which had originally sentenced Lewis in 2005, was permitted to assign more weight to Lewis's new criminal conduct while on supervised release—possessing with intent to distribute 100 pills containing fentanyl, a dangerous drug, less than six months after he served a 15-year prison sentence for a drug-trafficking crime—and failure to take responsibility for that conduct. *See Taylor*, 997 F.3d at 1354. While Lewis presented reasons for a downward variance, we may not vacate his sentence "merely because we would have decided that another one is more appropriate." *Irey*, 612 F.3d at 1191. Because the court's sentence was supported by the record and was not "outside the range of reasonableness as dictated by the facts of the case," *see Taylor*, 997 F.3d at 1354, we affirm.

**AFFIRMED.**